UNITED STATES of America, Plaintiff-Appellee,

v.

Jo Ann HARRELSON, Charles Voyde Harrelson and Elizabeth Nichols Chagra, Defendants-Appellants.

No. 83–1199.

United States Court of Appeals, Fifth Circuit.

July 8, 1985.

Charles Campion, San Antonio, Tex., (Court Appointed), for J. Harrelson.

Thomas G. Sharpe, Jr., Brownsville, Tex., (Court Appointed), for C. Harrelson.

Warren Burnett, Galveston, Tex., Larry Zinn, San Antonio, Tex., for E. Chagra.

Edward C. Prado, U.S. Atty., San Antonio, Tex., LeRoy Morgan Jahn, Asst. U.S. Atty., Monty Carlson, Ann T. Wallace, Atty., Appellate Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

## ON PETITIONS FOR REHEARING AND SUGGESTIONS FOR REHEARING EN BANC

Before GEE, REAVLEY and DAVIS, Circuit Judges.

PER CURIAM:

In a vigorous and cogent Suggestion for Rehearing En Banc, the United States calls in question our reversal of Elizabeth Chagra's conspiracy conviction. We held that the trial court erred when it refused her request for a jury charge that in order to convict her of that offense it must find that she entered the conspiracy to murder Judge Wood with premeditation and with malice aforethought, such being the degree of criminal intent necessary to the substantive offense itself, instead instructing the jury that it would suffice for her conviction that she knowingly and wilfully became a member of a conspiracy to murder Judge

Wood on account of the performance of his official duties. Our holding was based on such statements by the Supreme Court as are to be found in *Ingram v. United States*, 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959), that "conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself." (emphasis in original). See also *United States v. Feola*, 420 U.S. 671, 686, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975).[1]

We might write at length on the policy considerations implicated by the "plurality of intent" controversy. In the view of some commentators, it should suffice that between at least two conspirators (or perhaps in one only) there existed the degree of intent required for conviction of the substantive offense, the others joining "knowingly and wilfully" in the enterprise; in that of other authorities, no person should be convicted of conspiracy to commit a given crime without proof that he personally possessed that degree of criminal purpose.[2] In the practical end, these conflicting positions reduce to debating points to be made before the jury. For us, the matter is simply concluded: we bear in mind our situation as magistrates sitting on a subordinate court.

■ The Supreme Court has spoken broadly and categorically in these premises, perhaps in recognition that conspiracy law is something of a potential ampelopsis.[3] The history of the prosecution of conspiracy, like that of treason, contains disreputable chapters. In any event, we hew to the Court's broad language; if that is to be trimmed, it is for the Court to do so, not for us. Until it does, we march by our orders.[4] Unless the Court does not mean what it has said, one cannot be convicted of conspiracy to commit first degree murder without being found to have entertained the gravest of criminal intents: premeditation and malice aforethought. We maintain our view that the trial court erred in failing to require such a finding of the jury as a condition of conviction. Considering the importance of that conclusion and of the case in which we draw it, we rest confident that if we have erred in following the Supreme Court's expressions too literally, it will tell us so.

It remains for us to deal with an ingenious alternative contention advanced by the United States. Supposing the panel to be correct in its view of the requisite intent for conspiracy to commit first degree mur-

---

1. We recognize that the quoted language speaks of a degree of intent which must be present for the conspiracy to exist, rather than one which must be present in each individual conspirator before he can be a member, and hence is not precisely conclusive of the issue before us today. But the existence of an intent presupposes an intender, and we are unable to envision how one can become a member of a group that is in part defined by a degree of common intent without sharing in it.

2. *Compare* Note, *Developments in the Law—Criminal Conspiracies*, 72 Harvard L.Rev. 920, 940 (1958–59) ("... under a statute which is interpreted to make the specific danger sufficient in itself to warrant conviction, even if wrongful intent is required, it should be enough that one person alone possesses it."), *with* LaFave & Scott, *Criminal Law* 470 (1972) ("Although some of the decisions seem to suggest that when a person joins a group enterprise he is by that fact alone shown to have the same intention as the others, it must be remembered that the question of whether the requisite intent was present must be separately considered as to each individual who is alleged to be a member of the conspiracy. If, for example, *A, B,* and *C* agree to take *D*'s property, and *A* and *B* thereby intend to permanently deprive *D* of the property but *C* does not have that intent, then it is not correct to conclude that *C* is part of a conspiracy to commit larceny.").

3. "Ampelopsis?"
   "Suburban plant that climbs by suction. *You know*—first year, tender little shoots—second year, fine show—next year, all over the shop." Sayers, *The Unprincipled Affair of the Practical Joker*, in Lord Peter 69 (1972).

4. We take occasion to acknowledge the correction by the United States of our overbroad discussion of the possible liability, under the government's construction of 18 U.S.C. § 1114, of a surgeon who causes a judge's death. A more apt hypothesis would suppose the unsuccessful treatment of one who suffered a heart attack while on the bench.

der, the government suggests, the charge given should be viewed as one for a lesser included offense: wilful murder, *i.e.,* murder in the second degree. And because the penalty ceiling for conspiracy to commit second degree murder is the same as that for conspiracy to commit first degree murder, the argument runs, Elizabeth Chagra has suffered no prejudice. Although the argument comes close indeed, it contains one fatal flaw and we must reject it.

■ The intent required for second degree murder is malice aforethought; it is distinguished from first degree murder by the absence of premeditation. *United States v. Shaw,* 701 F.2d 367, 392 (5th Cir.1983). The trial court did not charge on malice aforethought as to Elizabeth Chagra, however, but rather on wilfulness—a different concept.[5]

■ There are no federal common-law crimes, only statutory ones. *Dickey v. United States,* 404 F.2d 882, 884 (5th Cir. 1968). Title 18 recognizes no such crime as wilful murder of a federal officer arising from the performance of his duties. It recognizes only murder in the first degree, in the second degree, or manslaughter arising from such a cause. The instruction given defines none of these. It follows that the jury convicted Elizabeth Chagra of conspiring to commit a non-existent crime.

The Petitions for Rehearing are DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Federal Rules of Appellate Procedure and Local Rule 35) the Suggestions for Rehearing En Banc are DENIED.

---

**5.** "An act is done 'wilfully' if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law." 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* 384 (1977).

"'Malice aforethought' means an intent, at the time of a killing, wilfully to take the life of a human being, or an intent wilfully to act in callous and wanton disregard of the consequences to human life; but 'malice aforethought' does not necessarily imply any ill will, spite or hatred towards the individual killed." 2 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* 215 (1977).