UNITED STATES of America, Plaintiff-Appellee,

v.

Elizabeth Nichols CHAGRA, Defendant-Appellant.

No. 86–2171.

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1986.

Larry Zinn, San Antonio, Tex., Warren Burnett, Galveston, Tex., for defendant-appellant.

W. Ray Jahn, Asst. U.S. Atty., (Mrs.) Helen M. Eversberg, U.S. Atty., LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Elizabeth Chagra appeals from her conviction of conspiracy to murder Federal Judge John H. Wood, Jr., of the Western District of Texas. She urges that she was tried and convicted of an offense that does not exist; that the jury charge incorrectly defined the element of intent; that there was insufficient evidence to support the offense if it does exist; and that the trial court abused its discretion by imposing the same sentence for this "lesser" offense as it had on her conviction for the "greater" offense of conspiracy to murder in the first degree. We consider each argument in turn and explain its lack of merit.

I

Elizabeth Chagra was first indicted for her role in the murder of Judge Wood on April 15, 1982. She was charged in count one of that indictment, with her husband Jimmy Chagra, her brother-in-law Joe Chagra, and Charles Harrelson, with conspiring to commit first-degree murder of a federal judge in violation of 18 U.S.C. §§ 1111, 1114, and 1117. Also charged in a separate count with conspiracy to obstruct justice, she was convicted of both counts, but on appeal we reversed her conviction for conspiracy to murder and remanded the case for a new trial on that count. *United States v. Harrelson,* 754 F.2d 1153, *reh'g denied,* 766 F.2d 186 (5th Cir.1985); *United States v. Chagra,* 754 F.2d 1181 (5th Cir. 1985); *United States v. Harrelson,* 754 F.2d 1182 (5th Cir.1985); *United States v.*

*Chagra,* 754 F.2d 1186 (5th Cir.1985). On the first appeal we found that the instructions to the jury did not require the government to prove premeditation and malice aforethought at the time Elizabeth Chagra joined the conspiracy to murder, essential elements of the substantive crime of murder in the first degree. We observed that *Ingram v. United States,* 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959), held that "conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself ..." *id.* at 678, 79 S.Ct. at 1319. We then explained that:

> "[f]irst degree murder under Section 1111 clearly requires the criminal intent of premeditation and malice aforethought. Thus, proof of premeditation and malice aforethought is required to sustain a conviction of conspiracy to commit first degree murder under that section." *Harrelson,* 754 F.2d at 1172 (citation omitted).

Before the trial on remand, a new grand jury returned a superseding indictment with one count charging Elizabeth Chagra with conspiring "to kill with malice aforethought ... in violation of Title 18, United States Code, Sections 1111 and 1114, and in violation of Title 18, United States Code, Section 1117." The new indictment did not allege premeditation and, at a pretrial conference, the government conceded that the prosecution did "not maintain that Mrs Chagra premeditated prior to joining the conspiracy." Her motion to dismiss the new indictment because it did not charge an offense was denied.

II

Elizabeth Chagra argues here, as she did below, that because second degree murder "is distinguished from first degree murder by the absence of premeditation," language from our opinion in *Harrelson,* 766 F.2d 186, 189 (5th Cir.1985), and a conspiracy is an agreement to commit a crime, there can be no conspiracy to commit second degree

murder. This is so because "you cannot plan the unplannable, intend the unintended." She points out that:

> [p]remeditation is the formation of the intent or plan to kill, the formation of a positive design to kill. It must have been considered by the defendants.

*United States v. Frady,* 456 U.S. 152, 173–174, 102 S.Ct. 1584, 1597, 71 L.Ed.2d 816 (1982).

The present argument has its genesis in the effort of the prosecution to meet the requirement expressed in *Ingram v. United States,* 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959) and *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975) that "to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." *Id.* at 686, 95 S.Ct. at 1265. The government recognized that the substantive offense of second degree murder requires proof of an intentional killing with malice aforethought. The superseding indictment on which Elizabeth Chagra was tried in the second trial alleged an intent to kill and the government undertook to make that proof. The judge instructed the jury that:

> In order to convict Elizabeth Nichols Chagra, you must find and believe beyond a reasonable doubt that the instant she joined the conspiracy, if indeed she did, that she intended to accomplish the purpose of the conspiracy, that is to kill Judge John H. Wood, Jr., with malice aforethought. Therefore the government must prove beyond a reasonable doubt that Elizabeth Chagra conspired to kill John H. Wood, Jr., with the requisite intent of malice aforethought. If the government fails to prove such intent beyond a reasonable doubt, you must acquit the defendant.

But, Elizabeth Chagra argues, the agreement necessary to a conspiracy, and premeditation, are sufficiently the same that one cannot exist without the other; that in the context of this case, she cannot have agreed with her husband to the killing of Judge Wood without premeditation. Conversely, that second-degree murder is an unplanned offense and therefore could not be the subject of a conspiracy.

■ The surface appeal of this argument rests on an incorrect assumption and is without merit. In *Harrelson* we read *Ingram* and *Feola* to require that the government prove that at the time of the agreement the intent required for the illegal objective of the conspiracy also existed. We did not hold that the intent required for the substantive offense is required for the agreement itself—that the agreement was premeditated. What is required is that the defendant agree with another to accomplish an illegal objective and that at the time of agreement the defendant also have the state of mind required to commit the substantive crime. The two states of mind are almost always one, or tend to collapse into one, but it is nonetheless important that the inquiries be made separately.

■ Having said this, the quick answer to defendant's argument is that without proving premeditation the government can prove intent to kill with malice aforethought. Under the government's theory it was entitled to prove that at the moment of conspiratorial agreement, her intent to kill Judge Wood was impulsive and with malice aforethought. An impulsive killing is nonetheless the intentional taking of life and with malice aforethought is murder in the second degree. Certainly then the element of agreement and the requisite intent to commit the substantive offense were in harmony. More to the point, they were certainly not mutually exclusive requirements of proof.

■ Nor does the rhetorical flourish that "one cannot plan an unplanned event" present a different argument, in any event, one of substance. It suggests that second degree murder can be sustained here only on the theory of impulsive killing and one cannot possess the intent to kill impulsively at some future time. Conspiracy, however is a crime independent of the substantive

offense that was its object. The focus of a conspiracy offense is upon agreement. The inquiry is into defendant's intent at the time of the illegal agreement or conspiracy, and that state of mind can certainly be to impulsively kill such as, "yes! let's kill the judge."

## III

Elizabeth Chagra argues that if there were a substantive crime charged, the court erred in two material ways in instructing the jury regarding malice aforethought. The court instructed the jury as follows:

> "Malice," as that term has been used here, is but another name for a certain state or condition of a person's mind or heart. Since no one can look into the heart or mind of another, the only means of determining whether or not malice existed *at the time of the killing* is by inference drawn from the surrounding facts and circumstances as shown by the evidence in the case.

> "Malice aforethought" means an intent *at the time of a killing* willfully to take the life of another human being or an intent willfully to act in callous and wanton disregard of the consequences of human life. Malice aforethought does not necessarily imply any ill will, spite or hatred towards the individual killed or that *the intent to kill was thought out before the killing.*

> Now, in determining whether the Defendant, Elizabeth Nichols Chagra, joined the conspiracy with malice aforethought, the jury should consider all the facts and circumstances preceding, surrounding, and following any agreement, if any, as shown by the evidence in the case which tends to shed light upon the condition of the mind and heart of Elizabeth Nichols Chagra before and at the time of the agreement. No fact, no matter how small, no circumstance, no matter how trivial, which bears upon the question of malice aforethought, should escape careful consideration by the jury. (emphasis supplied)

■ The first error is said to be the instruction that malice aforethought included "an intent willfully to act in callous and wanton disregard of the consequences of human life"; that the court's instruction did not demand proof of an intent to kill but only of reckless acts causing the death of another. This, however, is the correct definition of malice. *United States v. Harrelson*, 766 F.2d 186, 189 n. 5 (5th Cir. 1985). There is no reason that a defendant cannot have this intent at the time he joins a conspiracy to kill. As the district court put it:

> [The] evidence could very well show that ... Chagra was aware of her husband's dangerous violent tendencies, and that her encouragement of his stated intent to murder Judge Wood demonstrated conduct which was so reckless, so wanton and such a gross deviation from a reasonable standard of care that a jury could find her guilty of conspiracy to commit intent-to-do-serious-bodily-injury murder. . . .

The second urged error is that the instruction is ambivalent as to when Elizabeth Chagra must have had this state of mind, at one place in the charge asking the jury to determine the presence of malice at the time she joined the conspiracy and at another place in the charge asking the jury to determine the presence of malice at the time of the killing.

■ We review claimed deficiencies in a jury charge by looking to the entire charge as well as the arguments made to the jury. Our inquiry is whether in the context of the true trial scene the jury was given incorrect instructions. This is a common sense approach that recognizes that the jury charge does not stand alone for separate examination; that the charge is part of a larger picture of what the jury was told. Examined apart from context, charges frequently have seemingly ambiguous expressions and understandably so, given the need of trial courts to assemble the divergent requests of counsel into a meaningful whole. Potential ambiguity frequently lurks at the juncture points, but

is often resolved in closing argument by counsel's explanation of the case to the jury. For this reason, the use made of jury instruction in summation can be significant in an appellate court's effort to determine whether the ambiguity of a cold transcript actually existed at trial. *See United States v. Park,* 421 U.S. 658, 674–75, 95 S.Ct. 1903, 1912–13, 44 L.Ed.2d 489 (1975) (upholding charge upon review of entire record); *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (same); *Plunkett v. Estelle,* 709 F.2d 1004, 1008 (5th Cir.1983) (reversing conviction for deficiency in charge upon review of entire record).

■ The court first gave the pattern instruction defining the phrases "knowingly" and "willfully," defining willfully as including the specific intent to do something which the law prohibits, explaining that "specific intent" is more than the "general intent" to engage in illegal conduct. It instructed that knowingly means that the act was done voluntarily and intentionally, and not because of a mistake or accident or other innocent reason. As we have earlier discussed, the court told the jury that the government had to prove that Elizabeth Chagra had two intents: the intent requisite to agreement and the intent to commit the substantive offense which was the object of the conspiracy. The jury was told that the government must prove that Elizabeth Chagra willfully, knowingly, and with malice aforethought became a member of the conspiracy. As she points out, the court then defined malice aforethought in an unexceptional way except it referenced intent at the time of the killing. Thereafter, the court told the jury that it had to find beyond a reasonable doubt whether Elizabeth Chagra joined the conspiracy with malice explaining "if the defendant, with an understanding of the unlawful character of the plan to kill Judge Wood on account of the performance of his official duties, knowingly, willfully and with malice aforethought, joined in the unlawful scheme," the jury could convict her.

Whatever uncertainty there may have been from the charge alone, defense counsel's eloquent summation left no uncertainty as he outlined the government's burden. Without objection from the prosecution or correction from the court, he argued:

Now, you are instructed that the government must prove beyond a reasonable doubt that at least two of the defendants charged with conspiracy had at least the criminal intent necessary to commit the offense, that is, the intent to murder the judge with malice aforethought. In order to convict Elizabeth Nichols Chagra, you must find and believe beyond a reasonable doubt that at the instant she joined the conspiracy, if indeed she did, that she intended to accomplish the purpose of the conspiracy, that is, to kill Judge John H. Wood, Jr., with malice aforethought. Therefore, the government must prove beyond a reasonable doubt that Elizabeth Chagra conspired to kill Judge John H. Wood with the requisite intent of malice aforethought, and if the government fails to prove such intent beyond a reasonable doubt, you must acquit the defendant.

Viewing the charge as a whole and in the context of trial, we are persuaded that the charge stated the government's burden to prove beyond a reasonable doubt that at the time Elizabeth Chagra joined the conspiracy she intended to kill with malice aforethought. We are aided in that judgment by the able closing arguments that reduced any risk that the jury would be confused by the reference to the time of killing for the inquiry into malice aforethought.

**IV**

■ Elizabeth Chagra argues that, all else aside, there was insufficient evidence to convict. We turn to that evidence. There is no question but that there was sufficient evidence that Jimmy and Joseph Chagra conspired to kill Judge Wood to prevent his presiding over Jimmy Chagra's trial. We will not recount all of that sordid story because it is set out in the opinions deciding the earlier appeals to this court.

We identify three circumstances that furnish the evidentiary support for the conviction of Elizabeth Chagra.

First, there was evidence that Jimmy and Joseph had discussed the killing of Judge Wood in his courtroom and on returning to Las Vegas talked to Elizabeth about the killing of Judge Wood. In a letter later written to Judge Wood's widow she admits that, in a conversation in her kitchen, she told Jimmy that it was "ok" to kill the judge.

Second, there was also evidence that after this conversation, Jimmy met with the assassin Charles Harrelson and determined that Harrelson was prepared to carry out the killing. After meeting with Harrelson, Jimmy came back to his wife and asked what he should do, stating that "I'll leave it up to you." At this critical juncture, Elizabeth urged the killing of Judge Wood.

Third, there was evidence that after Judge Wood was killed, Elizabeth delivered the purchase price to Harrelson's stepdaughter in Las Vegas, well aware that the money she was delivering was to pay the killer. This is sufficient evidence.

## V

Elizabeth Chagra next contends that her thirty-year sentence was excessive. The argument is that the trial court imposed the same sentence on her conviction for conspiracy to murder in the first degree, and that it was an abuse of discretion to impose the identical sentence for the "lesser" included offense of conspiring to commit murder in the second degree. The argument is without merit.

Congress gave to the trial court the authority to impose a life sentence for the offense of conspiring to murder, whether the substantive crime was murder in the first or murder in the second degree. Thus, the trial court acted well within the range of its statutory power. While we fail to see in the expression, abuse of discretion, any grant of appellate review over criminal sentences and this is not an appealing case for its discovery, our limited appellate role is not the determinant.

However one views this crime, this sentence was lenient. Driven by greed, Elizabeth Chagra gave her energies to a plot which, with a cowardly shot in the back, struck at the heart of government.

AFFIRMED.