**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Julian ESPARZA, Defendant–Appellant.**

**No. 88–2804.**

United States Court of Appeals, Fifth Circuit.

Aug. 17, 1989.

H. Michael Sokolow, Roland E. Dahlin, II, FPD (STX), Houston, Tex., for defendant-appellant.

Kathlyn Giannaula, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before POLITZ, DAVIS and DUHE, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of aiding and abetting the transportation of illegal aliens, 8 U.S.C. § 1324(a)(1)(B), 18 U.S.C. § 2, and aiding and abetting the harboring of illegal aliens, 8 U.S.C. § 1324(a)(1)(C), 18 U.S.C. § 2, Julian Esparza appeals, contending that (1) the evidence was insufficient to sustain the convictions because the aliens did not remain in this country in violation of law; (2) the trial court impermissibly directed a verdict on an essential element of the offense; and (3) the trial court erred in instructing the jury on accomplice witness testimony. Finding sufficient evidence to support the convictions and perceiving no error of law, we affirm the convictions.

### Background

On January 8, 1987 Maria Decerrato, Sonia Jacinto, Vilma Rodriguez, Vicia Borjas and three of their young children, all citizens of Honduras, entered the United States, crossing the Rio Grande River from Mexico. The following evening the women were arrested by United States Border Patrol agents in Kingsville, Texas and transported to the Immigration & Naturalization Service (INS) office in Brownsville, Texas where they were charged with illegal entry. Because there was no space to detain the women they were released on their own recognizance with written and verbal instructions not to leave the Harlingen District of the INS. Each woman was given copies of her Order to Show Cause, Arrest Warrant, and Order of Release on Recognizance.

Several days later Julian Esparza approached the women at a church-sponsored shelter in San Benito, Texas and offered to transport them "to the other side of the United States" for $400 per person. When Decerrato told Esparza that they did not have any money, he agreed to take the group to Houston with the understanding that when they arrived Decerrato would contact her husband who would pay his fee. During the travel Esparza and his wife removed from each alien's papers the Order of Release on Recognizance containing the conditions of release.

When the group reached Houston, Esparza contacted Decerrato's husband for payment. Esparza then ordered the women and children to stay in a room in his garage until the money was paid. After suffering prison-like conditions for over three weeks, Decerrato, Jacinto, and Rodriguez left the garage and alerted a police officer of their plight. The women reported that Esparza and his wife had kept them in the garage and had threatened to take their children away if they tried to leave. Esparza informed the police that the women were illegal aliens and were being sheltered by him and his wife. The matter was turned over to the INS.

Esparza and his wife were indicted for aiding and abetting the transportation of illegal aliens, 8 U.S.C. § 1324(a)(1)(B), 18 U.S.C. § 2, and aiding and abetting the harboring of illegal aliens, 8 U.S.C. § 1324(a)(1)(C), 18 U.S.C. § 2. At trial Decerrato, Jacinto, and Rodriguez testified for the government. Borjas, who had remained with the Esparzas, testified for the defense. Esparza and his wife were convicted by the jury and sentenced. Julian Esparza timely appealed.

### Analysis

Esparza contends that the evidence is insufficient to sustain his convictions under 8 U.S.C. § 1324(a)(1) because the women had been granted Orders of Release on Recognizance by the INS, and, therefore, did not remain in the United States in violation of law. His argument is without merit. Section 1324(a)(1), subsections (B) and (C), applies criminal penalties to any person who:

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law; [or]
>
> *     *     *     *     *     *
>
> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation....

The statute sets forth, in disjunctive form, the violations. The prosecution must prove that the alien, who is transported or harbored by the defendant, "has come to, entered, or remains in the United States in violation of the law." *United States v. Rivera*, 859 F.2d 1204, 1209 (4th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989). The government is not required to prove all three conditions. Even if the aliens had remained in the United States lawfully, Esparza still would have violated 8 U.S.C. § 1324(a)(1) because

the record reflects that the aliens had "come to" and "entered" this country illegally. *See United States v. Rodriguez–Rodriguez,* 840 F.2d 697 (9th Cir.1988); *see also United States v. Morales–Rosales,* 838 F.2d 1359, 1361 (5th Cir.1988).

■ Esparza next contends that the district court impermissibly directed a verdict on an essential element of the offense. In instructing the jury the trial court stated that the aliens entered the country illegally and remained in the country illegally, and that the orders of release on recognizance did not legitimize or legalize their entry. The trial court committed no error by these comments. "We have consistently held that it is not error for judges to guide jurors in their deliberations by remarking on the evidence. But we have made clear that, if the trial judge chooses to comment on the evidence, he *must* instruct the jury that they are not bound by his comments...." *United States v. Johnson,* 718 F.2d 1317, 1324–25 (5th Cir.1983) (quotations omitted). In this case, the trial judge advised the jury that they were the exclusive judge of the evidence and that if they did not agree with his view of the evidence they were free to reject it. Additionally, the trial court's characterization of the law was accurate, and his comments on the evidence related to undisputed factual issues.

■ Esparza also contends that the trial court committed reversible error by giving the jury a general instruction on accomplice witness testimony rather than the specific instruction he requested. Esparza asserts that the instructions could have allowed the jury to convict without finding guilt beyond a reasonable doubt. Esparza's reliance on *Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972), and *United States v. Stulga,* 531 F.2d 1377 (6th Cir.1976), is misplaced. In *Cool* the jury was instructed to disregard an accomplice's exculpatory testimony *unless* the jury found the testimony credible beyond a reasonable doubt. No such erroneous instruction was given in the case at bar. In *Stulga* the court instructed the jury that it could convict on the basis of the accomplice testimony, but did not instruct the jury that it also could acquit on the basis of that testimony. Because a wealth of exculpatory testimony and virtually no inculpatory testimony had been offered by accomplices, the Tenth Circuit held that the trial court's refusal to instruct as to the exculpatory evidence could have had the effect of instructing the jury to discount it. In the instant case there is neither wealth of exculpatory evidence nor paucity of inculpatory testimony, nor has anything else in the jury charge been brought to our attention which would allow "the jury to convict despite its failure to find guilt beyond a reasonable doubt." *Stulga* at 1380 (quoting *Cool,* 409 U.S. at 103, 93 S.Ct. at 356, 34 L.Ed.2d at 338; *see United States v. Villarreal,* 764 F.2d 1048 (5th Cir.), *cert. denied,* 474 U.S. 904, 106 S.Ct. 272, 88 L.Ed.2d 233 (1985).

■ Esparza's contention that the instruction left the jury with the impression that only the testimony of Borjas, the alien who testified on his behalf, was to be weighed with caution is similarly without merit. To the extent that Borjas could be viewed as an accomplice all four of the women could be viewed as accomplices. Moreover, when confronted with assertions of deficiencies in the jury charge this court considers the entire charge and the arguments to the jury. *United States v. Chagra,* 807 F.2d 398, 402 (5th Cir.1986), *cert. denied,* 484 U.S. 832, 108 S.Ct. 106, 98 L.Ed.2d 66 (1987). The trial court instructed the jury that accomplice-witness testimony must be scrutinized with greater care and caution than the testimony of ordinary witnesses and that an accomplice's testimony may be influenced by the hope of benefits and may be considered by the jury as tainted because of such influence. Each defense attorney, in summation, alerted the jurors to the importance of their believing the testimony of the government witness beyond a reasonable doubt. Each argued that testimony of the defense witness could serve to create a reasonable doubt, even if the jurors believed only a part of it. Under these circumstances Esparza has not established clear error on a significant matter that operated to his prejudice. Finally, the

instruction given by the trial court substantially covered the substance of the specific instruction requested by Esparza. *See United States v. Terrazas–Carrasco*, 861 F.2d 93 (5th Cir.1988).

The convictions are AFFIRMED.