United States Court of Appeals,

Fifth Circuit.

No. 94-20838.

Curtis WEEKS, Petitioner-Appellant,

v.

Wayne SCOTT, Director, Texas Department of Criminal Justice, Institutional Division, et al., Respondents-Appellees.

June 23, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before REAVLEY, KING and WIENER, Circuit Judges.

PER CURIAM:

Curtis Weeks appeals from the denial of his petition for a writ of habeas corpus. For the reasons set forth below, we affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 7, 1988, Curtis Weeks, who had previously tested positive for the human immunodeficiency virus ("HIV"),[1] was being transferred from one prison unit to another. He was cursing loudly and complaining about the restraints that had been placed upon him. After a stop to change drivers and to feed Weeks, the transfer continued. Weeks grew more agitated, however, and he tore a panel off of the door of the van along with the headliner from the roof of the van. Weeks stated that he was going to "dog" the officers and that he was "going to cut one of the boss's heads off." The

---

[1]HIV is the virus that causes acquired immune deficiency syndrome ("AIDS").

1

guards placed Weeks on the ground and further restrained him while Weeks continued to yell and curse at the officers.

After being placed back in the van, Weeks's cursing and yelling persisted. He banged his head against the wire mesh in the van and he threatened the officers, stating that he was "going to take somebody with him when he went." Weeks also stated that he was "medical now" and that he was "HIV-4." Shortly thereafter, Weeks spit twice in the face of one of the prison guards, and the guard testified that Weeks's saliva covered his glasses, his lips, and his nose. Weeks's saliva entered the guard's nose, but the guard was uncertain as to whether any of Weeks's saliva entered his mouth. The guard testified that when Weeks stated that he was "HIV-4," Weeks was staring directly at him. He also testified that Weeks told everybody that he had AIDS and that he was going to take as many with him as he could.

On November 4, 1989, Weeks was convicted of attempted murder for spitting on the prison guard. After finding that Weeks had two prior felony convictions, the jury sentenced him to imprisonment for life. The state court of appeals affirmed Weeks's conviction on July 9, 1992. On October 14, 1992, the Texas Court of Criminal Appeals refused discretionary review. On January 6, 1994, Weeks filed a petition for a writ of habeas corpus in federal district court. In his petition, Weeks claimed relief on two grounds. First, Weeks claimed that the State unconstitutionally failed to prove an element of attempted murder at trial because there was no evidence that spitting by an HIV-infected person "tends to" cause

2

death.[2]  Second, Weeks claimed that the trial court's charge to the jury was constitutionally inadequate because it allowed the jury to convict Weeks without proof of the "tends to" element.

The district court denied relief, noting that "the words "could have' and "tends to' have been used interchangeably in this instance, and the [Texas] Court of Appeals did not by it[s] use of the word "could' intend to minimize or diminish the requirements of that element."  The court then reviewed the evidence and concluded that it was sufficient to support Weeks's conviction.  As to Weeks's second argument, the court found that "the charge, read as a whole and in the context of the entire trial proceedings, adequately stated the government's burden to prove beyond a reasonable doubt the "tends' element of the crime."  Despite this denial of relief, the district court did grant a certificate of probable cause, and Weeks appealed from the district court's decision.

## II. ANALYSIS AND DISCUSSION

### A. Sufficiency of the Evidence

In essence, Weeks claims that there is no evidence that spitting "tends but fails to effect the commission of" murder.  According to Weeks, there was no evidence that his saliva contained

---

[2]The attempt statute states the following:

> A person commits an [attempt] offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

Tex.Penal Code § 15.01(a).

3

the HIV virus, and there was no evidence that spitting HIV-infected saliva "tends" to cause death. Weeks offers a massive amount of scientific evidence in support of this proposition. As Weeks states, "[p]rosecution evidence—especially the charlatanesque testimony in this case—cannot establish as "true' what is scientifically established as false. Mr. Weeks' conviction can no more rest on the "fact' that HIV can be transmitted by spitting than it could on the pre-Copernican "fact' that the sun revolves around the earth."

The standard for assessing the sufficiency of the evidence to support a conviction is well-settled:

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Alexander v. McCotter,* 775 F.2d 595, 597-98 (5th Cir.1985) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). In making this determination, a court should not substitute its view of the evidence for that of the fact-finder; instead, a court should consider all of the evidence in the light most favorable to the prosecution. *See id.* at 598. In addition, to make this determination, a court must refer to the substantive elements of the criminal offense as defined by state law. *See id.*

Weeks was convicted of attempted murder under Texas Penal Code § 15.01(a). Under that statute, a conviction requires proof beyond a reasonable doubt of the following elements: 1) a person; 2) who with the specific intent to commit murder; 3) does an act

4

amounting to more than mere preparation; 4) which tends but fails to effect the commission of murder. *See Rocha v. State,* 648 S.W.2d 298, 301 (Tex.Crim.App.1982). In the instant appeal, the only contested element of the offense is whether Weeks's spitting on a prison guard is an act that "tends" to cause death.

Weeks contends that the state court of appeals and the federal district court erroneously diluted the plain meaning of the "tends to" requirement by finding that it can be met with a showing of a theoretical possibility. Weeks argues that "[a]s a matter of common parlance, the word "tends' contemplates more of a causal connection between an act and a prohibited result than a mere theoretical possibility."

It is true that on Weeks's direct appeal, *see Weeks v. State,* 834 S.W.2d 559 (Tex.App.—Eastland 1992, pet. ref'd), the Texas court of appeals equated "tends" with "could." The court stated that "[t]o prove attempted murder, it is sufficient to show that the accused had the intent to cause the death of the complainant and that he committed an act, which amounted to more than mere preparation, that **could have caused** the death of the complainant but failed to do so." *Id.* at 561 (citing *Flanagan v. State,* 675 S.W.2d 734 (Tex.Crim.App.1984)) (emphasis added); *see also id.* at 562 ("The issue, then, before this court is whether sufficient evidence, when viewed in the light most favorable to the verdict, was presented to the jury showing that appellant **could have transmitted** HIV by spitting on the officer." (emphasis added)). Other courts have similarly construed the statutory language. *See*

5

*Garcia v. State,* 541 S.W.2d 428, 430 (Tex.Crim.App.1976) ("It follows that to prove an "attempted murder' it is sufficient if the accused has the intent to cause serious bodily injury and commits an act "amounting to more than mere preparation' that **could cause** the death of an individual but fails to do so." (emphasis added) (footnote omitted)), *overruled on other grounds, Flanagan v. State,* 675 S.W.2d 734, 742 (Tex.Crim.App.1984); *Staley v. State,* 888 S.W.2d 45, 48 (Tex.App.—Tyler 1994, no pet.) ("To prove attempted murder, the evidence must be sufficient to show that Appellant intended to cause serious bodily injury, that he committed an act that amounted to more than "mere preparation,' and that the act **could have caused** the death of an individual." (emphasis added)); *see also Alexander,* 775 F.2d at 598 (stating the elements of the Texas attempt statute and concluding that the evidence was sufficient to support an attempted murder conviction, in part because "[t]here was testimony that the lug wrench **could be used** to kill a person" (emphasis added)).

It is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law, *see Moreno v. Estelle,* 717 F.2d 171, 179 (5th Cir.1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984), and we defer to the state courts' interpretation of the Texas attempt statute. *See, e.g., Seaton v. Procunier,* 750 F.2d 366, 368 (5th Cir.) ("We will take the word of the highest court on criminal matters of Texas as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law."), *cert.*

6

*denied,* 474 U.S. 836, 106 S.Ct. 110, 88 L.Ed.2d 90 (1985).

Thus, it appears that the state law defines the substantive "tends" element of the attempt offense by equating it with "could"; i.e., death must be possible from the act. Indeed, the substantive requirement of the statute has been evaluated (and, in effect, defined) by the state courts in the context of the evidence presented in this case, *see Weeks,* 834 S.W.2d at 561-65, as well as elsewhere. The relevant question then becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found, beyond a reasonable doubt, that spitting **could** transmit HIV.

The prosecution called four witnesses, Dr. Mark Dowell, Paul Cameron, Albert Wells, and Dr. Lorraine Day, to testify about HIV. Cameron and Dr. Day qualified as experts on HIV.[3] Weeks called Dr. Richard Pollard to testify as an HIV expert. The experts disagreed on whether HIV could be transmitted through saliva, and all of the experts were vigorously cross-examined. *See Weeks,* 834 S.W.2d at 562.[4] Dr. Dowell testified that "the possibility is low but certainly not zero" that HIV could be transmitted by spitting. Cameron testified that HIV could possibly be transmitted by saliva and by being spit upon, and he testified that there have been approximately ten cases of transmission through saliva. Dr. Day

_____

[3]The state court of appeals found that Dr. Dowell also qualified as an expert on HIV. Weeks disputes this finding, however, arguing that the prosecution made explicit to the jury that "we haven't called [Dr. Dowell] here as an HIV expert."

[4]The state court of appeals' opinion describes the testimony of the various witnesses in great detail.

cited several documented cases of saliva transmission of the HIV virus. On the other hand, Dr. Pollard testified that it had never been proven that HIV could be transmitted by spitting, and he opined that it was extremely remote, if not impossible, for HIV to be transmitted by spitting.

In this case, the jury chose to believe the witnesses who testified that HIV could be transmitted through saliva. On appeal, Weeks discredits the State's witnesses and undermines their expertise, but this "discrediting" was also brought out at the trial level, and the jury resolved the credibility dispute in favor of the State. Moreover, Weeks has not argued that the testimony of the State's experts is inadmissible. Simply put, differences in opinion go to the weight of the evidence, not to its admissibility, and such disputes are within the province of the jury to resolve. *See Christophersen v. Allied-Signal Corp.,* 939 F.2d 1106, 1109 (5th Cir.1991) (en banc) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."), *cert. denied,* 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992). Weeks also presents a mountain of scientific evidence to support the contention that HIV cannot be transmitted through saliva,[5] but on appeal, as long as

---

[5]Indeed, Weeks contends that the district court erred in refusing to take judicial notice that, "as a matter of Texas law," Weeks could not have transmitted HIV by spitting. In support of this proposition, Weeks cites the language of the Texas Register, which states that "[b]iting and being bitten is not considered as an exposure to HIV because without visible blood present, saliva does not contain quantities of the virus

8

some evidence existed for the jury to draw its conclusions, we cannot disturb its assessment.[6]

In short, viewing the State's evidence in the most favorable light, the jury was presented with testimony that HIV transmission through saliva and spitting is possible.  Although Weeks's counsel made a mighty effort to discredit the State's experts, the jury still chose to believe their testimony.  We are not in a position to disturb its conclusions.[7]

---

large enough to cause infection after exposure."  19 Tex.Reg. 1454 (1994).  The district court, as well as the state court of appeals, declined to take judicial notice, apparently on the grounds that whether saliva can transmit the HIV virus is not conclusively established and is not free from reasonable dispute. The differences in the expert testimony in this case also lead us to conclude that the issue of HIV transmission through saliva is not conclusively established.  Thus, we find no error in the district court's refusal to take judicial notice.

[6]Because HIV-infected persons will not always have HIV present in their saliva, Weeks contends that his conviction must be reversed since it is undisputed that the State failed to offer any evidence at trial that HIV was actually present in **Weeks's** saliva.  Sufficient evidence was presented, however, for the jury to conclude beyond a reasonable doubt that Weeks's spittle could have transmitted HIV.  Cameron testified that there is a greater chance of HIV being present in saliva if blood is present in the saliva, and that it is common for people with HIV-3 or HIV-4 infections (like Weeks) to have gum diseases and bleeding gums. Dr. Day testified that Weeks had just eaten before the spitting incident, and that blood in the saliva is more likely after eating.  Moreover, Dr. Day testified that Weeks had gingivitis and other symptoms at the time of the spitting that increased the chance that he would have blood in his saliva.  Thus, sufficient evidence was before the jury for it to conclude beyond a reasonable doubt that Weeks's saliva could have contained the HIV virus.

[7]Courts in other jurisdictions have split in their treatment of this issue.  *Compare Scroggins v. State,* 198 Ga.App. 29, 401 S.E.2d 13, 20 (1990) ("Appellant makes much of the expert's testimony that there is only a "theoretical possibility' of transmittal of the virus through saliva, but a "theoretical possibility' is clearly a "possibility,' or else the phrase has

B. The Jury Charge

Weeks argues that the trial court's charge to the jury was constitutionally inadequate because it negated the State's burden to prove the "tends" element beyond a reasonable doubt. Weeks asserts that throughout his trial, the prosecutor and the trial judge led the jury to believe that the State did not have to prove that HIV transmission via spitting was possible. Furthermore, Weeks contends that in charging the jury on how to apply the law to the facts, the court omitted the crucial "tends" element. Weeks highlights the following "critical" portion of the jury charge:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 8th day of June 1988, in Walker County, Texas, the defendant, Curtis Weeks, did attempt to cause the death of Ronald Alford with specific intent to kill Ronald Alford, by intentionally spitting on the said Ronald Alford, while defendant was infected with human immunodeficiency virus; and you further find beyond a reasonable doubt that the defendant, in so acting, was not acting under the

no meaning. So long as medical science concedes this "theoretical possibility,' the jury was well within the evidence to consider the human bite of a person infected with the AIDS virus to be "deadly.' ") *and State v. Haines,* 545 N.E.2d 834, 839-41 (Ind.Ct.App.1989) (observing that HIV transmission by bites or contact with blood was at least possible, and to a degree that exceeded a merely theoretical or speculative chance) *with Glick v. Henderson,* 855 F.2d 536, 539 n. 1 (8th Cir.1988) ("You won't get AIDS from saliva, sweat, tears, urine or a bowel movement." (quoting U.S. Dep't of Health and Human Services, Pub. No. (CDC) HHS-88-8404, *Understanding AIDS,* p. 2 (1988))) *and Chalk v. United States Dist. Court,* 840 F.2d 701, 706 (9th Cir.1988) ("Although HIV has been isolated in several body fluids, epidemiological evidence has implicated only blood, semen, vaginal secretions, and possibly breast milk in transmission. Extensive and numerous studies have consistently found no apparent risk of HIV infection to individuals exposed through close, non-sexual contact with AIDS patients.") *and Thomas v. Atascadero Unified School Dist.,* 662 F.Supp. 376, 378 (C.D.Cal.1986) ("The overwhelming weight of medical evidence is that the AIDS virus is not transmitted by human bites, even bites that break the skin.").

immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of attempted murder, as charged in the indictment.

According to Weeks, this charge failed to include the critical element of attempted murder—that the act "tends but fails" to effect the commission of murder.

When examining a jury instruction on habeas review, the Supreme Court has stated that "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (internal quotation omitted). Further, "[i]t is well-established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.* (internal quotation omitted). We inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* (internal quotation omitted).

In *United States v. Chagra,* 807 F.2d 398, 402 (5th Cir.1986), *cert. denied,* 484 U.S. 832, 108 S.Ct. 106, 98 L.Ed.2d 66 (1987), we announced similar principles:

We review claimed deficiencies in a jury charge by looking to the entire charge as well as the arguments made to the jury. Our inquiry is whether in the context of the true trial scene the jury was given incorrect instructions. This is a common sense approach that recognizes that the jury charge does not stand alone for separate examination; that the charge is part of a larger picture of what the jury was told.... For this reason, the use made of jury instruction in summation can be significant in an appellate court's effort to determine whether the ambiguity of a cold transcript actually existed at

11

trial.

As mentioned, the "tends but fails" requirement of the attempt offense is a separate element that must be proven beyond a reasonable doubt by the State. The State, however, appeared to make a number of inappropriate comments to the jury indicating that evidence of the "tends" element was unnecessary for conviction. For example:

[Transmission of HIV through saliva] is not necessarily an element of this case. I hope everybody realizes that after voir dire. **We don't have to prove to you beyond a reasonable doubt that transmission in this form is possible.** The question is intent.

Nowhere in there does it say that the State has to prove that this man is going to get AIDS. It doesn't say that the State has to prove that this man has a high probability of getting AIDS. **It doesn't say that we even have to prove that he could even get AIDS this way.** It doesn't say that anywhere in there.

According to Weeks, when the trial commenced, the State directed the jury to concentrate on intent and to minimize or ignore the "tends" element:

We are dealing with the subject of AIDS, how it's transmitted, and basically the State has to prove beyond a reasonable doubt that the person charged, Curtis Weeks, intentionally and with the specific intent to cause the death of an individual, spit on Ronald Alford, who is a guard out at TDC, and he intended to kill him by doing that act when he was infected with HIV at the time. Does everybody understand that? **It doesn't say anywhere there that the State has to prove how the disease is transmitted or what the probability of getting AIDS is in this way or anything like that.**

Despite these improper statements in the presence of the jury, we believe that the jury was aware of the "tends" element. Although the so-called "critical" paragraph of the charge fails to specifically address the "tends" element, "attempt" was defined to

12

include the "tends" element earlier in the court's charge.  *See United States v. Jokel,* 969 F.2d 132, 136 (5th Cir.1992) ("Any one instruction, however, does not have meaning in isolation from the instructions that went before and came after it.");  *Weeks,* 834 S.W.2d at 565.  Indeed, the trial court instructed the jury that "[a] person commits an [attempt] offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails, to effect the commission of the offense intended.  Such is an attempt to commit an offense."  Because "attempt" was defined to include the "tends" element, the later use of the term "attempt" in the so-called "critical" portion of the jury charge implicitly incorporated the "tends" element into the charge.

Moreover, defense counsel's summation, presented without objection, specifically stated the State's burden to prove the "tends" element beyond a reasonable doubt, and Weeks's counsel discussed the "tends" element.  *See Chagra,* 807 F.2d at 403 ("Whatever uncertainty there may have been from the charge alone, defense counsel's eloquent summation left no uncertainty as he outlined the government's burden.").  In its final argument, even the State told the jury that "[t]he State does have to prove to you that this tends but fails to effect the commission of a murder." Finally, considering that most of the trial consisted of the jury listening to multiple experts argue over whether HIV can be transmitted through saliva or spitting, we believe that the jury was aware that an attempted murder conviction depended upon proof

13

of the possibility of HIV transmission through saliva or spitting.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.