**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-51152
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

RUDOLPH ANDREW GONZALES, also known as Andrew Rudolph Gonzales,

Defendant - Appellant.

Appeal from the United States District Court
For the Western District of Texas
(DR-99-CR-383-FB)
August 24, 2000

Before HIGGINBOTHAM, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM:[1]

Rudolph Andrew Gonzales ("Gonzales") appeals his conviction for violating 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (B)(I). We affirm.

**BACKGROUND**

Two Boarder Patrol Agents ("the agents") were watching for alien smuggling activity on May 14, 1999 at the Hesles Motel in

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Eagle Pass, Texas. They observed several people coming out of rooms 25 and 26 wrapped in towels and draping wet clothing over the balcony railing. They suspected that these people were illegal aliens because the motel was often used to smuggle aliens and is close to the boarder.

Soon after observing the activity outside rooms 25 and 26, the agents saw Gonzales park at the motel and proceed to Room 25. A few minutes later, Gonzales went to room 26. He then returned to his car, picked up "something small" and walked back to the rooms. After he again left the rooms and returned to his car, the agents followed and stopped Gonzales. They asked Gonzales whom he visited in rooms 25 and 26. Gonzales replied that he visited no one but went to the motel to rent a room.

After returning to the hotel, the agents interviewed the room occupants and discovered that they were illegal aliens from Mexico. The illegal aliens, Edith Aguilar ("Aguilar") and Martha Alvarez ("Alvarez"), told the agents that Gonzales was the "coyote" who helped them enter the United States. The agents placed Gonzales, Aguilar and Alvarez under arrest.

A grand jury indicted Gonzales for harboring Aguilar and Alvarez in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (B)(I). At trial, Aguilar and Alvarez testified that they had falsely identified Gonzales as the man responsible for their presence in the United States because they were allegedly threatened and frightened by the agents. They also claimed that they did not know

2

Gonzales, that he did not come into their room at the Hesles Motel, and that they did not make any arrangements with him to enter the United States. A jury convicted Gonzales of harboring Alvarez but acquitted him of harboring Aguilar.

## DISCUSSION

Gonzales first argues that the government failed to prove that he harbored or attempted to harbor Alvarez. Gonzales contends that the government was only able to prove that he twice briefly visited motels rooms occupied by illegal aliens, took something small with him on one visit, and later denied having been in the rooms. However, he argues, based on this evidence and the inconsistent statements by Aguilar and Alvarez, no reasonable fact-finder could have concluded, beyond a reasonable doubt, that Gonzales had harbored or attempted to harbor Alvarez.

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the government and must determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. United States v. Greer, 137 F.3d 247, 249 (5th Cir. 1998). We review direct and circumstantial evidence adduced at trial, as well as all inferences drawn from it, in the light most favorable to the verdict. United States v. Sanchez, 961 F.2d 1169, 1173 (5th Cir. 1992). To prove harboring of an illegal alien, the government must show: (1) that Alvarez was an alien who had entered the United

3

States in violation of the law; (2) Gonzales harbored her in the United States; and (3) Gonzales knew or acted in reckless disregard of the fact that the alien entered or remained in the United States in violation of the law. 8 U.S.C. 1324(a)(1)(A)(iii); United States v. Esparza, 882 F.2d 143, 145-46 (5th Cir. 1989).

We conclude that the evidence was sufficient to convict Gonzales of harboring Alvarez. The jury reasonably inferred that, based on circumstantial evidence, Gonzales was harboring an illegal alien. Agents saw persons hanging wet clothes to dry; Gonzales enter two rooms with illegal aliens inside. The hotel was located less than a mile from the Rio Grande River and the two rooms in question were notorious for alien smuggling. Therefore, the evidence against Gonzales and the inferences the jury drew from it were sufficient to convict Gonzales.

Gonzales next argues that the admission of Aguilar's and Alvarez's prior statements - even for the limited purpose of impeachment - deprived him of a fair trial. At trial, Gonzales moved to suppress their original statements to the Agents on the ground that they were involuntary. The district court denied this motion and admitted the statements for the limited purpose of impeachment.

We review a district court ruling on the admissibility of the evidence for abuse of discretion. United States v. Bermea, 30 F.3d 1539, 1574 (5th Cir. 1994). In general, it is well established that the "admission at trial of a coerced out-of-court statement

4

from a non-defendant may violate the defendant's right to a fair trial as guaranteed by the due process clause of the fifth amendment." United States v. Merkt, 794 F.2d 266, 274 (5th Cir. 1985).

We conclude that the district court did not abuse its discretion by permitting these out-of-court statements to be used at trial. There is little evidence suggesting that these statements were involuntary and, as the district court noted, there are serious questions as to credibility of Aguilar's and Alvarez's testimony. United States v. Logan, 949 F.2d 1370, 1377 (5th Cir. 1991) (noting that a district court's task at a suppression hearing is to evaluate the witnesses' testimony and to judge their credibility). In addition Rule 607 of the Federal Rules of Evidence provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." This includes using in court any contradictory out-of-court statements for the limited purpose of impeaching the witness.

Gonzales also contends that the government improperly relied on extra-record evidence to bolster the identification testimony of the agents. At trial, the government argued that Gonzales was the man "in the green t-shirt" who agents had seen entering motel rooms occupied by illegal aliens. However, there was no evidence that the man seen by the agents wore a green t-shirt, or that Gonzales wore a green t-shirt on the night of his arrest.

We review this claim for plain error because Gonzales did not

5

object to these alleged abuses at trial. <u>United States v. Gallardo-Trapero</u>, 185 F.3d 307, 321 (5th Cir. 1999). Although the government concedes that the "green t-shirt" comments may have been superfluous misstatements by the prosecution, the evidence at trial thoroughly supported the agents identification of Gonzales. The agents saw Gonzales park his car, go to the hotel rooms, return to his car to pick up a package and then return to the hotel rooms. We conclude that the green t-shirt comment does not amount to plain error.

For these reasons, we affirm.

AFFIRMED.