Douglas W. THOMPSON, Petitioner,

v.

Bill ARMONTROUT, Respondent.

No. 85–0989–CV–W–5–P.

United States District Court,
W.D. Missouri, W.D.

Sept. 17, 1986.

Mark Flaherty, Kansas City, Mo., for petitioner.

Steven Hawke, Office of Missouri Atty. Gen., Kansas City, Mo., for respondent.

## OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

SCOTT O. WRIGHT, Chief Judge.

Petitioner's *pro se* habeas corpus petition filed pursuant to 28 U.S.C. § 2241 and 2254 (1976), seeks relief from a 1985 decision of the Missouri Board of Probation and Parole denying petitioner parole release. Petitioner's "First Amended Petition for Writ of Habeas Corpus" sets forth one claim in support of relief. Petitioner contends that

the records of the Missouri Board of Probation and Parole reflect that its decision to deny petitioner release upon parole was based exclusively upon the vindictiveness of the sentencing judge and the parole board against petitioner because petitioner had successfully challenged his state court conviction for first degree murder. Petitioner contends that his constitutional right to due process of law was violated by the Parole Board's decision. Because petitioner raised the above ground in his petition for writ of habeas corpus in state court, respondent has conceded exhaustion of petitioner's available state remedies.

The Court has determined that no further evidentiary hearings are required in this case and that the dispute can be resolved on the basis of the record. *Brown v. Lockhart*, 781 F.2d 654, 656 (8th Cir. 1986).

A brief summary of the facts underlying petitioner's ground for relief indicates that petitioner has been convicted three times, in three successive trials, of the 1961 first degree murder of a Cape Girardeau, Missouri police officer. Petitioner first was convicted and sentenced to death in the Circuit Court of Bollinger County, Missouri, in December, 1961. Although that conviction was affirmed on direct appeal, *State v. Thompson*, 363 S.W.2d 711 (Mo. banc 1963), petitioner eventually obtained a reversal of the conviction through a Rule 27.26 proceeding. *State v. Thompson*, 396 S.W.2d 697 (Mo. banc 1965). In 1966, petitioner was retried and reconvicted in Mississippi County, Missouri and sentenced to life imprisonment. Petitioner was incarcerated in the Missouri State Penitentiary pursuant to the life sentence until November 21, 1980, when petitioner was released on parole to a detainer placed upon him by the State of California. Four months later, petitioner was released from incarceration in California pursuant to a writ of habeas corpus on March 24, 1981. Petitioner remained under parole supervision of the Missouri Board of Probation and Parole until January, 1983, when his second conviction was overturned by the United States Court of Appeals for the Eighth

Circuit. *Thompson v. White*, 661 F.2d 103 (8th Cir.1981), *vacated* and *remanded*, 456 U.S. 941, 102 S.Ct. 2003, 72 L.Ed.2d 463 (1982), *aff'd on remand*, 680 F.2d 1173 (8th Cir.1982), *cert. denied*, 459 U.S. 1177, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983). Once again, the State of Missouri decided to retry petitioner for first degree murder. Petitioner was convicted for the third time on the murder charge on December 13, 1984, and was sentenced to life imprisonment for the second time. Upon reconviction in 1984, petitioner was returned to the Missouri State Penitentiary, where he presently is incarcerated.

As soon as petitioner was reconvicted in 1984, he began challenging that reconviction. *See* Petitioner's Exhibit 4. The Missouri Board of Probation and Parole originally took the position that they would defer a decision concerning petitioner's request for release on parole pending a resolution of petitioner's challenge to his reconviction in state court. The Board's position is reflected in their review of petitioner's case on January 22, 1985 (Petitioner's Exhibit 7); their letter to petitioner on February 4, 1985 (Petitioner's Exhibit 5); their decision of June 14, 1985 (Petitioner's Exhibits 8 and 12); the letter to petitioner's state court attorney on June 27, 1985 (Petitioner's Exhibit 11); and a note to Dick Moore, Chairman of the Missouri Board of Probation and Parole, on August 15, 1985 (Petitioner's Exhibit 10).

Only after petitioner's state court attorney informed the Board that their decision to defer action on petitioner's parole request pending court resolution of the issues was in direct conflict with the Board's own rules and regulations did the Board issue an opinion supposedly considering petitioner for parole release. *See* Petitioner's Exhibit B. That decision, dated September 18, 1985, was based on the same parole hearing as the decision of June 14, 1985. The Board's decision stated as follows:

In consideration of the offense for which you stand convicted and your prior criminal conviction record, in the opinion of

the Board your release at this time would not be in the best interest of society. When you were paroled to your custody detainer, November 21, 1980, it was not the intent of the Board that you would be released from confinement. It was, in fact, the belief of the Board that because of your five to life sentence in the state of California that you would be incarcerated in that state for an extended period of time.

Petitioner's Exhibit 3; Respondent's Exhibit K–2.

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment prevents an increased sentence after a criminal defendant has successfully challenged a conviction and has been reconvicted when the increased sentence is motivated by vindictiveness on the part of the sentencing judge. The Court stated:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased

sentence may be fully reviewed on appeal.

*Id.* at 725–726, 89 S.Ct. at 2080–2081.

In *Wasman v. United States*, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984), the Supreme Court indicated that relevant conduct or events that occurred subsequent to the original sentencing proceedings are those that throw "new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" *Id.* 104 S.Ct. at 3225–26 (Powell, J. concurring), *quoting North Carolina v. Pearce*, 395 U.S. at 723, 89 S.Ct. at 2079. Due process bars an increased sentence where no intervening conduct or events justifies the increase, *United States v. Whitley*, 734 F.2d 994, 996 (4th Cir.1984), or where no objective information concerning petitioner's conduct or culpability justifying the increase has been received. *Texas v. McCullough*, — U.S. ——, 106 S.Ct. 976, 980–981, 89 L.Ed.2d 104 (1986).

While the above decisions refer to vindictiveness and retaliatory motive on the part of a *sentencing judge* in imposing a more severe *sentence* upon reconviction, the dictates of due process require that the same standard apply to the action of the Parole Board under the facts set forth herein. Initially, the due process considerations set forth in *Pearce* apply to situations in which the state seeks to punish a criminal defendant for having exercised his post-conviction right of review. *North Carolina v. Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081. When an improper retaliatory motive or vindictiveness results in an increase in punishment imposed after a conviction or retrial, due process has been offended regardless of the form of that increased punishment (be it imprisonment, suspended sentence with probation, or fine). *See United States v. Gilliss*, 645 F.2d 1269, 1283 (8th Cir.1981). Thus, the *Pearce* presumption of vindictiveness may apply to second sentences which are more severe in terms of parole eligibility. If the judge had sentenced petitioner to life imprisonment without possibility of parole, such a sentence would be *a fortiori* more severe

for due process purposes than the previous life sentences. *See, e.g., United States v. Bello,* 767 F.2d 1065, 1068 (4th Cir.1985); *United States v. Gilliss,* 645 F.2d at 1283; *United States v. Hawthorne,* 532 F.2d 318, 323–324 (3d Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976).

■ The fact that the arm of the state which has imposed the increased punishment on petitioner in this situation is the Parole Board, and not a sentencing judge, should not prevent the Court from applying the *Pearce* presumption of vindictiveness to petitioner's increased punishment at issue herein. The Parole Board acted with a similar retaliatory motive as a sentencing judge would act and with the same result— the threat inherent in the Board's actions would, with respect to those already on parole but still under conviction, serve to "chill the exercise of basic constitutional rights." *North Carolina v. Pearce,* 395 U.S. at 724, 89 S.Ct. at 2080. The state cannot circumvent the dictates of due process merely by having the Parole Board deny petitioner parole release upon reconviction instead of resentencing petitioner to a life sentence without parole.

The record and file herein indicate several impermissible motives for the Board's denial of petitioner's parole release. First, the sentencing judge in petitioner's third trial provided information to the Board that stated that petitioner has been convicted three times of first degree murder and that thirty-six of his peers had found him guilty and recommended that he serve a life sentence in the penitentiary. The sentencing judge "was very adamant about [petitioner] being kept at the penitentiary and not be paroled." Petitioner's Exhibit 5. This information apparently was presented to all members of the Board as reflected by their initials at the bottom of Petitioner's Exhibit 6. Clearly, the Board believed that it should defer to the sentencing judge's wishes in that the Board indicated their deference on several occasions as previously noted. *See* Petitioner's Exhibits 5, 7, 8, 10, 11, and 12. Only after petitioner's state court attorney brought the error of their

thinking to the Board's attention did the Board issue the September 18, 1985, decision stating that petitioner's release on parole would not be in the best interests of society and that the Board had believed that petitioner would be incarcerated in California for "an extended period of time" when it released him on November 21, 1980. Petitioner's Exhibit 3; Respondent's Exhibit K–2.

Second, the Board itself had a personal stake in vindicating the first parole decision made in 1980. *See Chaffin v. Stynchcombe,* 412 U.S. 17, 27, 93 S.Ct. 1977, 1983, 36 L.Ed.2d 714 (1973). One of the Board members who decided in 1980 to release petitioner on parole to the detainer in California (resulting in petitioner's release from imprisonment within four months) again considered petitioner for parole after the state had spent the time and money necessary to convict petitioner for the third time. The Board obviously was desirous of redeeming itself in the eyes of the public after petitioner had obtained his release from California and imprisonment so quickly upon the Board's granting him parole in 1980. Only because petitioner is such a successful "writ writer" was the Board faced with "having to do over what it thought it had already done correctly." *United States v. Goodwin,* 457 U.S. 368, 383, 102 S.Ct. 2485, 2494, 73 L.Ed.2d 74 (1982), *quoting Colten v. Kentucky,* 407 U.S. 104, 117, 92 S.Ct. 1953, 1960, 32 L.Ed.2d 584 (1972). Clearly, the Board has an interest in discouraging criminal defendants such as petitioner from pursuing what it considers as meritless appeals after being paroled. *Chaffin v. Stynchombe,* 412 U.S. at 27, 93 S.Ct. at 1983.

Pressure from many sources caused the Board to punish petitioner more severely because he had caused the Board and the State of Missouri to appear weak and incompetent to the public. Given the above factors, the Court concludes that a presumption of vindictiveness should apply to the Board's decision to refuse to release petitioner on parole after he was convicted for a third time in 1984.

The *Pearce* presumption of vindictiveness may be overcome only by objective information concerning identifiable conduct on the part of petitioner either occurring since the time of the original parole decision, *Wasman v. United States,* 104 S.Ct. at 3225–26, or brought to the Board's attention since the time of the original parole decision. *Texas v. McCullough,* 106 S.Ct. at 980–981. Respondent apparently argues that the fact that the State of California did not incarcerate petitioner for as long a period of time as the Board had anticipated is sufficient new information to overcome the *Pearce* presumption of vindictiveness. Respondent, in fact, states that any vindictiveness by the Parole Board would be due to the betrayal by California, not due to petitioner's obtaining a reversal of his second conviction. Response to Court Order of June 2, 1986, at 12.

The Court does not consider respondent's argument to be persuasive. The possibility that the State of California might release petitioner from incarceration sooner than the Board had anticipated was information clearly available to the Board in 1980. Such a possibility is one that frequently must be considered by the Board upon parole release determinations. Further, in the 1985 decision to deny parole release the Board did not cite any intervening information concerning petitioner's conduct or culpability which would justify a more severe punishment after his reconviction in 1984. In fact, petitioner remained on parole for almost three years as a productive member of society before his reconviction in 1984. Finally, a review of the Board's own files reflects their retaliatory motive and vindictiveness toward petitioner for obtaining a reversal of his conviction, as previously discussed. As an arm of the State of Missouri, the Board's vindictiveness violates petitioner's due process rights as surely as if the sentencing judge had given petitioner a sentence of life without parole. Such a flagrant refusal to make a reasoned parole decision based upon identifiable conduct on the part of petitioner occurring since the time of the original parole decision in 1980 or occurring at the time of the crime at issue but brought to the Board's attention since the time of the original parole decision also is an abuse of the Board's discretion.

Accordingly, it is ORDERED that:

(1) the above-captioned petition for writ of habeas corpus is granted;

(2) petitioner's release will be stayed in order for the respondent to have an opportunity to file a notice of appeal;

(3) if the respondent fails to file a timely notice of appeal, the writ will issue forthwith.