**STATE ex rel. Richard W. SHIELDS, Petitioner,**

v.

**James PURKETT, Superintendent, Farmington Correctional Center, Respondent.**

**No. 76526.**

Supreme Court of Missouri, En Banc.

June 21, 1994.

Thomas W. Hartmann, Juan D. Keller, St. Louis, for petitioner.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

PRICE, Judge.

Petitioner Richard Shields obtained a writ of habeas corpus from this Court on February 22, 1994, for the purpose of reviewing the Missouri Board of Probation and Parole's (MBPP's) denial of parole release on February 11, 1993. Petitioner asserts MBPP improperly applied current parole statutes and regulations in denying parole, instead of applying the statutes and regulations in force at the time of his offenses in 1981. MBPP both has conceded petitioner's liberty interest in the application of the statutes and regulations in force in 1981 and has failed to overcome evidence that it did not apply those provisions. We deny habeas corpus relief and remand Mr. Shields to the custody of the department of corrections but issue a writ of mandamus ordering MBPP to hold another parole hearing and to apply the parole statute and regulations in effect in 1981. As this is an original remedial writ, this Court has jurisdiction. *Mo. Const.* art. 5, § 4; *Rule 84.23.*

### I.

Petitioner Richard Shields currently is confined within the Farmington Correctional

Center, under the control and jurisdiction of the Missouri Department of Corrections. On July 8, 1981, he began serving a forty-five year sentence for two convictions of attempted robbery in the first degree. Mr. Shields was considered for parole in July 1983, July 1988, January 1991, and January 1993. Parole was denied each time. The February 11, 1993 denial, which was based on the January 1993 hearing, is the subject of the present action. In its denial, MBPP concluded:

> Because you were convicted of an offense in which you attempted to rob three victims at gun point, the Board believes that your release at this time would depreciate the seriousness of the offense committed and/or promote disrespect for the law. The Board further notes that you have previously been convicted on two separate occasions for robbery and therefore there does not appear to be a reasonable probability at this time that you would live and remain at liberty without again violating the law. Therefore, the Board in its discretion has determined to schedule you for another personal parole hearing in January 1995.

At the time of Mr. Shields' offenses in 1981, the governing parole statute was § 549.261, RSMo 1978 [hereinafter "old statute"].[1] Under the authority of § 549.261.4, MBPP promulgated regulations, codified at 13 C.S.R. 80–2 (1980) [hereinafter "old regulations"], to determine a prisoner's eligibility for parole release. In 1982, after Mr. Shields already was incarcerated, § 549.261 was repealed and replaced with § 217.690 [hereinafter "current statute"]. 13 C.S.R. 80–2 also was repealed and replaced subsequent to Mr. Shields' incarceration; the replacement regulations are codified at 14 C.S.R. 80–2 (1992) [hereinafter "current regulations"]. Mr. Shields contends that MBPP improperly followed the current parole statute and regulations, instead of the old parole statute and regulations, at his January 1993 parole hearing.

## II.

Both the old and the current parole statutes require the parole board to determine whether the inmate could be released without detriment to the community or to himself. §§ *549.261.1; 217.690.1.* The primary distinction between the two statutes is that, once this condition is met, the old statute states that the board "shall" release or parole the inmate, whereas the current statute states that the board "may in its discretion" release or parole the inmate. In 1981, the Eighth Circuit held in *Williams v. Missouri Board of Probation and Parole*, 661 F.2d 697, 699 (8th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982), that the mandatory language of the old statute created a liberty interest in parole once the statutory requirements had been satisfied.

The main distinction between the old and the current regulations, for purposes of this case, is that under the old regulations the deterrent and retributive portion of a forty-five year sentence could be considered to have been served when the inmate had completed approximately 25% of the sentence, whereas under the current regulations the deterrent and retributive portion of a forty-five year sentence may be considered to have been served after 15 years. *13 C.S.R. 80–2.010(5)(A)(5); 14 C.S.R. 80–2.010(4)(H).* As Mr. Shields began serving his sentence in July 1981, he has met the minimum of the old regulations, but not that of the current regulations.

Mr. Shields claims that he was entitled to a hearing based on the statute and regulations in effect at the time of his offenses. In this regard, Mr. Shields raises three general issues: first, that MBPP should have applied the parole statute and regulations in effect at the time of his offenses; second, that MBPP improperly applied the current statute and regulations instead; and third, that it was arbitrary and capricious for MBPP to give a reason for denying parole that had been omitted from its earlier parole denials.

## III.

■ Mr. Shields asserts a liberty interest in parole arising from the application of the

---

1. The statutes and regulations at issue in this case are set out in the Statutory Appendix.

statute and regulations in effect at the time of his offenses.[2] In its brief, MBPP expressly stated that "[r]espondent agrees that petitioner has a liberty interest in the 1981 parole statutes and rules and regulations." *Respondent's Statement, Brief and Argument* at 23 (citing *Williams v. Missouri Board of Probation and Parole,* 661 F.2d 697 (8th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982)). Because MBPP conceded a liberty interest in parole, we need not address the merits of that issue.[3]

### IV.

Next, we must ascertain which set of statutes and regulations actually were applied by MBPP in the January 1993 hearing. MBPP argues that the burden was upon Mr. Shields to prove "conclusively" that it had applied the current statute and regulations. It is true that, ordinarily, the habeas corpus petitioner has the burden of proof to show that he or she is entitled to relief. *Hawk v. Olson,* 326 U.S. 271, 279, 66 S.Ct. 116, 120, 90 L.Ed. 61 (1945); *McIntosh v. Haynes,* 545 S.W.2d 647, 654 (Mo. banc 1977). This also is true in the specialized situation where the respondent is a parole board. *See, e.g., Joost v. U.S. Parole Commission,* 647 F.Supp. 644, 646 (D.Kan.1986); *Dunn v. United States Parole Commission,* 630 F.Supp. 795, 796 (D.Kan.1986), *rev'd on other grounds,* 818 F.2d 742 (10th Cir.1987); *Bates v. Murphy,* 796 P.2d 116, 120 (Idaho 1990); *Stanley v. Dale,* 171 W.Va. 192, 298 S.E.2d 225, 227–28 (1982).

However, where there is a deficiency in the record, and where the evidence lies in the hands of the state, this burden shifts to the state. *See United States ex rel. Smith v. Yeager,* 336 F.Supp. 1287, 1301–02 (D.N.J. 1971) (where record was deficient as to voluntariness of petitioner's confession, burden shifted to state), *aff'd on other grounds,* 451 F.2d 164 (3d Cir.1971), *cert. denied,* 404 U.S. 859, 92 S.Ct. 112, 30 L.Ed.2d 101 (1971); *United States ex rel. Senk v. Brierley,* 363 F.Supp. 51, 53–54 (M.D.Pa.1973) (where record was deficient as to validity of arrest, burden shifted to state); *see also Goins v. Brierley,* 464 F.2d 947, 949 (3d Cir.1972) (stating principle in dicta).

Mr. Shields claims MBPP conceded in its *Response to an Order to Show Cause Why Petitioner's Petition for a Writ of Habeas Corpus Should Be Denied* that it had used the current statute and regulations. MBPP stated:

> Furthermore, it was not an *ex post facto* violation for the Missouri Board of Probation and Parole to follow the guidelines under § 217.690, RSMo 1986 … *[A]pplying § 217.690, RSMo 1986, did not operate retroactively to the detriment of the petitioner.*

(Emphasis added.) Despite their subsequent, vehement arguments to the contrary, this statement stands, at the very least, as evidence that the current statute and regulations were applied. Additionally, MBPP's February 1993 denial contained a significant amount of language identical to that in the current regulations. The current regulations offer as a permissible reason for denying parole that:

> Release at this time would depreciate the seriousness of the offense committed or promote disrespect for the law.

*14 C.S.R. 80–2.010(9)(A)(1).* In its denial, MBPP concluded:

> … the Board believes that your release at this time would depreciate the serious-

---

**2.** He also asserts that application of the current statute and regulations was a violation of the *ex post facto* clause. Because the MBPP conceded a liberty interest, we do not reach this related issue.

**3.** The following cases discuss the manner in which a prisoner's liberty interest arises from certain parole statutes or regulations. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (U.S. Supreme Court held parole statute with mandatory language created a liberty interest); *Williams v. Missouri Board of Probation and Parole,* 661 F.2d 697, 699 (8th Cir.1981) (extending *Greenholtz* to § 549.261, RSMo 1978), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982). *See also Board of Pardons v. Allen,* 482 U.S. 369, 378, 107 S.Ct. 2415, 2421, 96 L.Ed.2d 303 (1987) (U.S. Supreme Court extended *Greenholtz* to a state statute worded very similarly to § 549.261); *Parker v. Corrothers,* 750 F.2d 653, 658 (8th Cir.1984) (extending *Greenholtz* to regulations).

ness of the offense committed and/or promote disrespect for the law.

The old regulations, on the other hand, phrased a similar reason as follows:

Release at this time would depreciate the seriousness of the offense committed and would thus be incompatible with the welfare of society.

*13 C.S.R. 80–2.020(2)(A)(1)*. Clearly, the language in MBPP's decision is much more similar to that in the current regulations than it is to that in the old regulations. This, too, is at least evidence that the current regulations were applied.

This evidence is sufficient to shift the burden to MBPP to prove it used the old statute and regulations. It has not met this burden. Therefore, we must assume the current statute and regulations were used by MBPP in its February 1993 denial of parole release. This error, however, does not mandate that Mr. Shields be released on parole.

### V.

The liberty interest in parole in Missouri under the old statute and regulations does not arise until *after* the statutory and regulatory conditions have been satisfied. *Williams*, 661 F.2d at 698–99; *Parton v. Atkins*, 641 S.W.2d 129, 131 (Mo.App.1982). Mr. Shields claims that, under the old regulations, MBPP "would have no authority to consider the seriousness, nature and circumstances of the offense in determining whether to release [him] on parole." *Brief of Petitioner* at 25. He claims this because the language of the old regulations stated that "the board considers the deterrent and retributive portion of the sentence to have been served when approximately twenty-five percent (25%) of the maximum sentence has been served". *13 C.S.R. 80–2.010(5)(A)(5)*.

■ As Mr. Shields' sentence is for 45 years, 25% was served after 11 years and 3 months, in October 1992. However, 13 C.S.R. 80–2.010(5)(A)(5) did not establish a bright-line rule mandating release after precisely one-fourth of the sentence was completed; to hold that it did would place the regulations in violation of § 549.261.3, which expressly provided that parole "shall not be considered a reduction of sentence". This, in turn, would invalidate the regulations under § 549.261.4, which provides that the board's regulations shall not be inconsistent with law. Obviously, this was not the regulations' intent.

Indeed, the two Missouri cases that have addressed the issue of whether the 25% rule mandates release after the minimum has been served, *McKown v. Mitchell*, 869 S.W.2d 765 (Mo.App.1993), and *Watley v. Missouri Board of Probation and Parole*, 863 S.W.2d 337 (Mo.App.1992), both have held that the 25% language served merely to "establish a *minimum* amount of time which the Board could consider as satisfying deterrence and retribution and not to establish a threshold at which an inmate may be released on parole." *Watley*, 863 S.W.2d at 339 (emphasis added); *McKown*, 869 S.W.2d at 769.

In his reply brief, Mr. Shields attempts to distinguish these cases, asserting that he never has claimed that he is, as a matter of law, automatically entitled to parole release after serving 25% of his sentence.

... [P]etitioner points out *only* that once he has served 25 percent of his sentence, the MBPP is precluded from considering the seriousness, nature and circumstances of his offense as a basis for parole denial.[4]

*Reply Brief* at 13. However, this is precisely what *Watley* and *McKown* held to be a misconstruction of the regulations. Indeed, the regulations themselves say "approximately twenty-five percent"; an approximation by definition cannot be construed as a bright-line rule.[5]

Moreover, the introductory language of the old regulations clearly provided that MBPP "considers each case on its individual merits" and that the various factors of the regulations are merely "weighted heavily" in the

---

**4.** Mr. Shields raises this within his *ex post facto* argument; however, since we need not address the *ex post facto* issue, and since it is relevant to the liberty interest issue, we address it here.

**5.** *Webster's New World Dictionary* defines approximation as "a close estimate". *Webster's New World Dictionary* 30 (Warner 1984).

decision-making process. *13 C.S.R. 80–2.010(5)*. This implies a certain level of discretion had been conferred upon MBPP. Thus, the language of one particular provision cannot be treated as determinative. *Watley* and *McKown* hold, as do we, that the 25% language merely establishes a minimum not only for purposes of parole release in general, but also for considering the retributive and deterrent portion of the sentence to have been served. While Mr. Shields was entitled to have his request for parole considered under the old statute and regulations, those statutes and regulations did not automatically and conclusively preclude MBPP from considering whether the seriousness, nature and circumstances of his offense provided a basis for denial.

## VI.

■ Next, Mr. Shields argues it was arbitrary and capricious for MBPP to list his two previous robbery convictions as indicative that he would not be likely to remain at liberty without again violating the law. He asserts that, because MBPP did not list this reason in its three earlier parole denials, it was estopped from raising it in this denial. This is simply incorrect.

Mr. Shields cites as support for his argument *Montoya v. United States Parole Commission*, 908 F.2d 635 (10th Cir.1990), which held that it was arbitrary and capricious for the parole commission to rely on two prior convictions to conclude that a prisoner was a more serious parole risk than indicated by his salient factor score,[6] when it had evaluated those same crimes for an earlier parole and decided they did not dictate an upward departure from the parole guidelines. *Id.* at 640.

We do not find *Montoya* persuasive here. The case is factually distinguishable. In *Montoya*, it appears that the parole commission had specifically evaluated the prior crimes in the past and concluded they were not sufficient to prevent the prisoner's parole. Thus, *Montoya* presented a situation where a subsequent conclusion was contrary to a prior conclusion, without any change in facts or further explanation for the differing result. Here, by contrast, MBPP had not previously resolved the issue in favor of Mr. Shields.[7]

■ Instead, MBPP should be allowed to consider all relevant factors at the time of its decision. To estop MBPP from considering any factors it had omitted to mention in prior hearings would prevent it from evaluating all relevant factors at the time parole is sought. This would contravene the statutory limitation that parole shall be ordered "only for the best interest of society", *§ 549.261.3*, which would violate the statutory mandate that the rules not be inconsistent with law. *§ 549.-261.4.*[8] Additionally, it may be permissible for MBPP to reconsider issues it previously had decided in a prisoner's favor, if such reconsideration can be fairly justified as not being arbitrary and capricious.

## VII.

■ We find that MBPP conceded that Mr. Shields had a liberty interest in the application of the old parole statute and regulations. We also find that, in light of evidence that the new statute and regulations improperly had been applied, MBPP failed to prove that the old parole statute and regulations were applied. This does not, however, require that Mr. Shields be released on parole. Nor does it preclude consideration of all relevant factors, whether or not they had been referenced in earlier MBPP decisions. Accordingly, we deny Mr. Shields' request

---

6. The "salient factor score" is a numerical scoring system used as an aid to determine whether a particular inmate is a good parole risk.

7. Shields' prior crimes were at least alluded to in the January 1991 parole denial, when the MBPP stated that it was "also noting that [he was] serving [his] third period of felony incarceration on robbery type offenses" as supportive of the seriousness of the offense. Also, even if MBPP had never mentioned the prior crimes, discussing them in January 1993 would not have been arbitrary and capricious, since it is within MBPP's discretion to evaluate all relevant factors at the time parole is sought.

8. MBPP appears to have stated these new factors conjunctively with the deterrence and retribution factors. Accordingly, we are unable to determine whether MBPP would have denied Shields' parole on these new factors alone.

for habeas corpus, quash our writ issued for purposes of review, and remand custody of him to the department of corrections. Rather, we issue a writ of mandamus ordering MBPP to conduct another hearing in accordance with the statutes and regulations in effect at the time of Mr. Shields' offenses in 1981.[9]

■ Finally, Mr. Shields asserts that ordering a new hearing is improper, because it may lead to a vindictive decision. *See Thompson v. Armontrout,* 647 F.Supp. 1093 (W.D.Mo.1986), *aff'd,* 808 F.2d 28 (8th Cir. 1986), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987). However, *Thompson* involved a case where the court found vindictiveness on the part of the parole board because of the inmate's repeated success in getting his convictions overturned. *Id.* at 1096–97. There has been no indication in this case of vindictiveness on the part of MBPP, and we will not presume it. It is sufficient to note that, on rehearing, should MBPP decline to grant parole, it must give reasons beyond a recitation of the statutory and regulatory language, consistent with our holding in *Cooper v. Board of Probation and Parole,* 866 S.W.2d 135, 138 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2718, 129 L.Ed.2d 843 (1994).

All concur.

### STATUTORY APPENDIX

The statute and regulations in effect in 1981 provide, in relevant part:

549.261. Parole from state penal institutions, prisoners eligible, when—interview by board—rules.—

1. When in its opinion there is reasonable probability that the prisoner can be released without detriment to the community or to himself, the board shall release or parole any person confined in any correctional institution administered by state authorities....

3. ... A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered a reduction of sentence or a pardon.

A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen....

4. The board may adopt such other rules not inconsistent with law as it may deem proper or necessary, with respect to the eligibility of prisoners for parole, the conduct of parole hearings or conditions to be imposed upon parolees....

§ *549.261,* RSMo 1978.

13 CSR 80–2.010 Parole Hearings

(5) Although the board considers each case on its individual merits, the following major categories of factors are weighted heavily in the decision-making process:

(A) Seriousness of the offense and the nature and circumstances of the offense to determine if the inmate has served sufficient time for the purposes of retribution and general deterrence—

1. the official version of the offense and the length of the sentence,

2. the inmate's motivation for committing the offense, his role in the offense, the amount of loss and/or injury to the victim, and the degree of sophistication evidenced in the offense,

3. offenses which involved a weapon and/or physical injury or possible injury to the victim,

4. crime-oriented activities such as a series of crimes, which reflect extensive crime involvement, and

5. the board considers the deterrent and retributive portion of the sentence to have been served when approximately twenty-five percent (25%) of the maximum sentence has been served, or when twelve (12) years of the maximum sentence has been served by inmates with sentences of life or fifty (50) years or more;

(B) Evaluation of the inmate's criminal record, both adult and juvenile— ...

(C) Institutional behavior— ...

(D) Participation in educational, vocational and rehabilitative programs available in the correctional facility— ...

---

**9.** For an explanation of this Court's authority to treat a petition for habeas corpus as one for mandamus, see *State ex rel. Haley v. Groose,* 873 S.W.2d 221 (Mo. banc 1994).

(E) Psychological reports ...

(F) Factors considered when there is neither a poor institutional discipline nor a serious criminal record and/or the deterrent and retributive portion of the sentence has been served—

1. factors related to prior criminal record ...

2. factors related to the present offense ...

3. factors related to the inmate personally ...

(G) Factors considered and weight attached vary according to the length of the maximum sentence and the amount of time served.

13 CSR 80–2.020 Possible Board Decisions Following a Parole Hearing

(2) Any one or several of the following decisions will be made:

(A) A denial of further parole consideration. The reasons may include, but are not limited to the following, with further specification where appropriate:

1. Release at this time would depreciate the seriousness of the offense committed and would thus be incompatible with the welfare of society.

2. There does not appear to be a reasonable probability at this time that the inmate would live and remain at liberty without violating the law.

3. The inmate has (a serious) (repeated) disciplinary infraction(s) in the institution.

4. Additional institutional treatment is required to enhance the inmate's capacity to lead a law-abiding life....

*13 C.S.R. 80–2.010(5), –2.020(2)(A)* (1980).

The current statute and regulations provide, in relevant part:

217.690. Board may order release or parole, when—personal hearing—standards—rules—minimum term for eligibility for parole, how calculated—first degree murder, eligibility for hearing—hearing procedure—notice.—1. When in its opinion there is reasonable probability that an offender of a correctional facility can be released without detriment to the community or to himself, the board may in its discretion release or parole such person except as otherwise prohibited by law....

*§ 217.690.1,* RSMo Supp.1992.

14 CSR 80–2.010 Parole Eligibility, Hearings, Reviews and Presumptive Release Dates

(4) Minimum Parole Eligibility ...

(H) For inmates serving life sentences and for inmates with sentences of forty-five (45) years or more, the board considers the deterrent and retributive portion of the sentence to have been served when the inmate has completed fifteen (15) years of the maximum sentence....

(9) Statement of Reasons for Decision.

(A) The reasons for decisions above the guidelines, for extension of the presumptive release date, denial of good time credit and for inmates for whom a presumptive release date has not been set may include, but are not limited to, the following reasons, with further specification of board policy where appropriate:

1. Release at this time would depreciate the seriousness of the offense committed or promote disrespect for the law;

2. There does not appear to be a reasonable probability at this time that the inmate would live and remain at liberty without violating the law;

3. The inmate has not substantially observed the rules of the institution in which confined; and

4. Release at this time is not in the best interest of society.

(B) The inmate shall receive a copy of the salient factor score sheet.